# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CATHERINE A. MCCALLA COX, and KELSEY CATHERINE COX, Individuals and Beneficiaries of the John A. McCalla Revocable Trust and the Nancy J. McCalla Revocable Trust,<br><br>    Plaintiffs,<br><br>and<br><br>MARY ROUSE, an Individual and Beneficiary of the John A. McCalla Revocable Trust and Nancy J. McCalla Revocable Trust,<br><br>    Intervening Plaintiff,<br><br>vs.<br><br>L. WAYNE SULLIVAN, Trustee of the John A. McCalla Revocable Trust and Nancy J. McCalla Revocable Trust,<br><br>    Defendant. | Case No. 14-CV-206-TCK-FHM |

## OPINION AND ORDER

Before the Court is Plaintiffs' and Intervening Plaintiff's Combined Motion to Appoint Receiver or Special Master and for Temporary and Permanent Injunction (the "Motion") (Doc. 59).

**I. Background**

This is an action by trust beneficiaries against the trustee. On April 9, 2014, Plaintiff Catherine Cox ("Cathey") filed this lawsuit in the District Court of Tulsa County, Oklahoma against Defendant L. Wayne Sullivan ("Sullivan"). Sullivan subsequently removed the case to this Court. On October 16, 2014, Cathey filed a First Amended Complaint, which named Kelsey Cox ("Kelsey") as an additional plaintiff. On May 26, 2015, Mary Rouse ("Mary") filed an unopposed

motion to intervene, which the Court granted.[1] Following Mary's intervention, Plaintiffs filed a Second Amended Complaint, alleging claims for (1) breach of fiduciary duty; (2) accounting; (3) breach of trust; and (4) declaratory judgment. The claims arise out of Sullivan's role as sole trustee for the John A McCalla Trust ("JAM Trust") and the Nancy J. McCalla Trust ("NJM Trust") (collectively, the "Trusts"). With Mary's intervention, all of the beneficiaries of the Trusts are parties to the action.

On June 18, 2015, Plaintiffs filed their Motion seeking appointment of a receiver to administer the Trusts during the pendency of this case. Alternatively, Plaintiffs seek both preliminary and permanent injunctions enjoining Sullivan from making any payments to himself or to his counsel without permission from the Court. The Court previously granted Plaintiffs' and Intervening Plaintiff's Motion for an Expedited Hearing (Doc. 60) and held a hearing on the Motion on July 2, 2015. The Court has considered the Motion, the evidence presented at the hearing, and the parties' supplemental briefing filed after the hearing (Docs. 67, 70, 72, and 73) in ruling on the Motion.

## II. Motion for Appointment of Receiver

Plaintiffs seek appointment of a receiver pursuant to Okla. Stat. tit. 12, § 1551. However, the appointment of a receiver in a diversity case is a procedural matter governed by federal law. *See* Fed. R. Civ. P. 66. While no precise formula exists to determine when a receiver should be appointed, courts generally consider the following factors in making such a determination: (1) whether the movant has a valid claim; (2) whether there is an immediate danger that the property

---

[1] For purposes of this Opinion and Order, "Plaintiffs" will be used to refer to Plaintiffs Cathey and Kelsey, as well as Intervening Plaintiff Mary.

will be harmed or lost; (3) whether legal remedies are adequate; (4) whether some less drastic legal remedy is sufficient; (5) whether there is fraudulent conduct or the possibility of fraudulent conduct on the part of the non-movant; (6) whether it is probable that the appointment of the receiver will be more beneficial than harmful; and (7) whether the movants will actually be in a better position by the appointment. *Waag v. Hamm*, 20 F. Supp. 1191, 1193 (D. Colo. 1998); *accord Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). "The appointment of a receiver is considered to be an extraordinary remedy that should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2983 (2014).

### 1. Valid claim

Based on the facts available and the evidence presented at the hearing, it appears that Plaintiffs may have valid claims for accounting, breach of fiduciary duty, and breach of trust. *See F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1299 (N.D. Okla. 1998) (requiring plaintiffs alleging claim for breach of fiduciary duty to prove (1) the existence of a fiduciary relationship; (2) a duty arising out of the fiduciary relationship; (3) a breach of the duty; and (4) damages proximately caused by the breach of the duty); Okla. Stat. tit. 60, § 175.57 ("A violation of a duty the trustee owes a beneficiary is a breach of trust.").

### 2. Immediate danger to property

Plaintiffs have not attempted to establish any immediate danger to the Trusts with respect to Sullivan's investment strategy or overall performance as a trustee. Plaintiffs allege that an immediate danger exists because Sullivan is overcompensating himself and wrongfully depleting

3

the Trusts' estates to pay his legal fees in this case. However, such harm can be addressed by the Court separately at summary judgment and/or after a judgment on the merits.[2]

3. **Adequacy of legal remedies**

The legal remedies available to Plaintiffs are adequate to address their concerns regarding Sullivan's compensation during his service as trustee. Should Plaintiffs obtain a judgment against Sullivan, they can be adequately compensated with money damages.

4. **Sufficiency of less drastic legal remedy**

A less drastic legal remedy is sufficient. Plaintiffs submitted briefing to the Court proposing duties of any receiver appointed by the Court. Such duties included approving of payments and fees by the trusts, reviewing the suitability of investments, authorizing material changes to the investments, preparing an accounting, and employing professionals necessary to perform such duties. The receiver, as envisioned by Plaintiffs, would essentially be acting as a co-trustee to Sullivan (albeit at a much higher cost to the Trusts than Sullivan). Of the duties outlined by Plaintiffs, the Court finds the accounting to be sufficient to address Plaintiffs' concerns and discover facts relevant to Plaintiffs' case.

5. **Fraudulent conduct**

Although Plaintiffs have intimated that some fraudulent activity may have occurred with regard to the Trusts' tax returns, they have not expressly stated as much or otherwise shown that fraud has occurred.

---

[2] The Court notes, however, that it considers payment of Sullivan's attorney's fees from the Trusts' estates to be improper. Therefore, if judgment is ultimately entered against Sullivan, continued payment of such fees may result in a fee award against Sullivan at the conclusion of this case.

### 6. More beneficial than harmful

Appointment of a receiver will likely be more harmful than beneficial. As noted above, the receiver envisioned by Plaintiffs would essentially be serving as a co-trustee to Sullivan. Sullivan currently charges the Trusts $500.00 per month for his services as trustee. Plaintiffs' proposed trustee, Peter Adamson, bills at a rate of $250.00 per hour and does not anticipate that his time will exceed ten hours per month. Appointing Adamson as a receiver would, at a minimum, more than double the Trusts' current monthly expenses. Given Plaintiffs' proposal that Adamson have authority to employ attorneys, accountants, and other professionals that he deems necessary, the appointment of a receiver could exponentially increase the Trusts' expenses. Accordingly, the Court has concerns that the appointment of a receiver would significantly deplete the assets of the Trusts during the pendency of this litigation.

### 7. Better position

Plaintiffs, as movants, would not necessarily be in a better position with appointment of a receiver. Although a receiver may provide Plaintiffs with the assurance that the Trusts' assets are safe, such assurance would come at a significant cost to the Trusts – Trusts which do not have substantial assets. Moreover, Plaintiffs have not expressed concerns regarding the propriety of Sullivan's investments. Instead, Plaintiffs have focused solely on Sullivan's compensation. Appointment of a receiver seems excessive given Plaintiffs' concerns, especially considering the attendant cost.

Only two of the seven factors weigh in favor of appointment of a receiver. Appointment of a receiver, therefore, is not warranted in this case. However, the Court finds that a third-party

5

accounting is necessary.[3] Such third party shall provide an accounting from May 9, 2006 – the date Sullivan became the sole trustee of the Trusts – to the present. The parties shall attempt to agree on an individual to perform the accounting and notify the Court within ten days of the selected individual. If the parties cannot agree, Plaintiffs and Sullivan shall each submit the name of a proposed accountant within twelve days from the date of this Opinion and Order.

## III. Conclusion

Plaintiffs' and Intervening Plaintiff's Combined Motion to Appoint Receiver or Special Master and for Temporary and Permanent Injunction (Doc. 59) is granted in part and denied in part.[4] As outlined above, the Court has ordered a third-party accounting of the Trusts from May 9, 2006 to the present. The parties are ordered to provide the Court with the name(s) of an accountant as outlined in Part II above.

**SO ORDERED** this 26th day of August, 2015.

_____
**TERENCE C. KERN**
**United States District Judge**

---

[3] Sullivan has no objection to a third-party accounting. (Doc. 72 at 1.)

[4] Because the Court has awarded Plaintiffs' some relief under their Motion to Appoint Receiver, the Court has not considered Plaintiffs' alternative request for a preliminary and permanent injunction and such request is denied.